[Crim. No. 20394. First Dist., Div. One. Sept. 29, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ANITA MARIE McMILLAN, Defendant and Appellant.

[Crim. No. 20090. First Dist., Div. One. Sept. 29, 1980.]

THE PEOPLE, Plaintiff and Appellant, v.
MARLENE CHERYL MOORE, Defendant and Respondent.

COUNSEL

Quin Denvir, State Public Defender, under appointments by the Court of Appeal, Michael S. McCormick, Deputy State Public Defender, and Paulino Duran, Acting Deputy State Public Defender, for Defendant and Appellant and for Defendant and Respondent.

George Deukmejian, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci, Blair W. Hoffman, Karl S. Mayer and Kenneth C. Young, Deputy Attorneys General, for Plaintiff and Respondent and Plaintiff and Appellant.

OPINION

**ELKINGTON, J.**—These two appeals concern the issue of the defendant state prisoners' right to presentence jail conduct credits (hereafter *conduct* credits) against their prison terms, such as are sometimes allowed county jail inmates under Penal Code section 4019. They peripherally relate to the presentence jail *"custody* credit" permitted by Penal Code section 2900.5.

California's high court recently (Feb. 19, 1980) decided *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874]. *Sage*, under the equal protection clause, holds: (1) that prisoners sentenced under the *determinate* sentence law, operative July 1, 1977, are entitled to such conduct credits against their prison terms as their presentence jail time served would have earned them under the general criteria of Penal Code sections 2931 and 4019; and (2) that prisoners sentenced under the previous *Indeterminate* Sentence Law are entitled to such conduct credits as they might have earned after July 1, 1977.

The subject of *Sage* was a mentally disordered sex offender who, found not amenable to further treatment, was returned to the committing court and sentenced to state prison. At his sentencing proceedings he sought, and was denied, conduct credits for the days he had earlier spent in jail and in the state hospital. On appeal the divided *Sage* court affirmed holding, for reasons here irrelevant, that a mentally disordered sex offender *was* entitled to presentence jail conduct credits when otherwise earned, but *was not* entitled to similar credits for preprison hospitalization time served under a mentally disordered sex offender commitment.

But, to insure state prisoners' allowance of presentence jail conduct credits, the *Sage* court announced the following procedures: "Penal Code section 2900.5 imposes on the sentencing court the obligation to determine the number of days of custody and, in those cases to which it expressly applies, conduct credit to which the defendant is entitled, and to enter the credits on the abstract of judgment. It is therefore appropriate to have the trial court make that determination pursuant to section 2900.5 for all defendants in the future. Inasmuch as such computations are made routinely by the jail administrator for misdemeanants, probationers, and other prisoners to whom the section applies, that officer can readily provide the court with the necessary computation and/or records. Any dispute over the right to credit, the number of days of credit, or the judgment or judgments to which the credits are applicable can then be resolved at the probation and sentence hearing. *It is unnecessary, however, to remand this defendant and others who have already been sentenced for new sentencing proceedings* to determine the additional credit to which they may be entitled. The Department of Corrections should make available to such prisoners an administrative procedure by which to ascertain their entitlement to conduct credit. (Cf. *In re Kapperman* (1974) 11 Cal.3d 542, 550, fn. 10 [114 Cal.Rptr. 97, 522 P.2d 657].) As the department already has in its

possession a copy of the abstract of judgment awarding custody credit, computation of the additional conduct credit should be a routine ministerial function." (26 Cal.3d 498, 508-509; italics added.)

*Sage*, it will be seen, calls upon the state's trial courts, *in the future*, to determine a convicted felon's conduct credits entitlement along with his section 2900.5 custody credit, at the time of his probation and sentence hearing. As to persons sentenced to state prison before *Sage*, remand to the superior court for judicial correction of claimed conduct credits error was found "*unnecessary*," for such correction could more conveniently be done under the Department of Correction's directed "administrative procedure by which to ascertain their entitlement to conduct credit." We are advised that since the instant appeals were taken the Department of Corrections has so implemented *Sage*'s direction.

The appeals before us are two of hundreds now pending before the state's Courts of Appeal where trial courts had, before *Sage*, variably ruled upon convicted defendants' motions for conduct credits. The Attorney General, not incorrectly, has observed: "There are well over 100 People's appeals in this District alone. In some the right amount was given; in some too little; in some too much. It is often impossible to tell from the record. If the orders granting credit are all simply vacated, the Department can efficiently and accurately give the proper credit. This would save much work. Most of the work saved would be otherwise done by the courts. Inmates would be at least as well off under the uniform...implementation of *Sage* by the Department, as under piecemeal, chaotic, judicial handling of the matter." (Fn. omitted.)

We are unpersuaded by the State Public Defender that *Sage*'s purpose was that reviewing courts nevertheless resolve and where found necessary, remand to the superior courts for correction, all *pending* claims of conduct credits error. As noted, that increased judicial burden was expressly found "unnecessary," since it could more expeditiously be handled administratively by the Department of Corrections. (Of course, when such administrative procedures have been exhausted, ultimate recourse will be to the courts. See *People* v. *Gaines*, 103 Cal.App.3d 89, 100-101 [162 Cal.Rptr. 827].) We interpret *Sage*'s effect as setting aside the many diverse pre-*Sage* superior court conduct credits determinations and to confer that function anew upon the Department of Corrections as to all such prior and uncompleted sentences.

Defendant Anita McMillan was sentenced, September 25, 1979, to state prison for two years, and given Penal Code section 2900.5 custody credit for 77 days of presentence jail time served. Her motion for conduct credits was denied. She appealed from the judgment; the only claimed error is the denial of conduct credits.

Defendant Marlene Moore was sentenced, May 11, 1979, to state prison for 16 months, with custody credit of 33 days and conduct credits of 11 days. The People have appealed from the "order, granting Penal Code section 4019 [conduct] credits, . . ."

■ In each case the Department of Corrections will determine appropriate conduct credits in accordance with its administrative procedure, and as directed by *Sage.*

There is a remaining issue. It is whether an otherwise entitled state prison inmate shall receive one day of conduct credits for each *two days*, or for each *three days*, of presentence jail time served. (Defendant Moore, it will be noted, was awarded one day of conduct credits for each three days served.)

Penal Code section 4019, subdivision (c), provides that for each "six-day period in which a prisoner is *committed* [italics added] to" (*not* "has served in") a jail facility "one day shall be deducted from his period of confinement" for so-called "good time." Subdivision (b) of the statute deducts another day for each six-day period of *commitment* for so-called "work time." ("Commitment . . .: [T]he consignment or sentencing to confinement . . . ." (Webster's New Internat. Dict. (3d ed. 1965) p. 457).)

Although the instant defendants had not been so "committed" or "sentenced" to serve their presentence jail custody, state prisoners so situated will reasonably be deemed under *Sage* to have earned the equivalent of *one day* of conduct credits for each *two days* of such presentence jail custody actually served. Such an interpretation is found consistent with *Sage*'s application of the equal protection of the law guaranty to presentence jail inmates. And it is in harmony with the state prison "good behavior and participation credit" of "a four-month reduction for each eight months served" (Pen. Code, § 2931) presently followed in substance by the Department of Corrections.

Such an interpretation of *Sage* will be followed by the superior court "for all defendants in the future."

We decline the suggestion of the State Public Defender that we give additional "guidance" to the superior court. And his argument that conduct credits should be extended to a prisoner's parole period continuing beyond the date of *Sage*'s promulgation appears inapplicable to the appeals here before us; its resolution will await an apposite case, and another day.

The judgment as to Anita McMillan (1 Crim. No. 20394) is affirmed, and the order "granting Penal Code section 4019 credits" as to Marlene Moore (1 Crim. No. 20090) is reversed; in each case the Department of Corrections will determine the defendant's right to, and amount of, conduct credits in accordance with *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], as modified, and with the views we have expressed.

Racanelli, P. J., and Grodin, J., concurred.